Jorge Alejandro Rojas
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
424-219-1582

FEE PAID

FILED
CLERK, U.S. DISTRICT COURT
10/30/2026
CENTRAL DISTRICT OF CALIFORNIA
BY JB DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JORGE ALEJANDRO ROJAS,
Plaintiff,
v.

MAGANA CONSTRUCTION INC DBA BUILD PROS CONSTRUCTION, BRIAN RAMON MAGANA, and BRYCE ULLMAN,
Defendants.

Case No. 2:26-cv-13047-MWC-BFM(x)

**COMPLAINT FOR:**

1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

Plaintiff, Jorge Alejandro Rojas, brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendants MAGANA CONSTRUCTION INC dba BUILD PROS CONSTRUCTION ("Magana Construction"), Brian Ramon Magana ("Mr. Magana"), and Bryce Ullman ("Ullman"), and alleges based on personal knowledge and information and belief:

## INTRODUCTION

1. As the Supreme Court has explained, Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019. The States likewise field a constant barrage of complaints. For nearly 30

years, representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the "TCPA", generally prohibits robocalls to cell phones and home phones. *See Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff brings this action against Defendants for violations of the TCPA, 47 U.S.C. § 227.

3. This case involves a campaign by Defendants which placed illegal automated calls to Plaintiff's telephone number, which is on the Do Not Call Registry, for construction/roofing services, which were not consented to.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they regularly and systemically conduct operations in the state of California. The wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Defendants are incorporated or located in this District.

6. Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

7. Plaintiff Jorge Alejandro Rojas is a natural person residing in Bolingbrook, IL 60440, and is a citizen of the State of Illinois. Plaintiff previously resided within this District.

8. Defendant MAGANA CONSTRUCTION INC dba BUILD PROS CONSTRUCTION ("Magana Construction") is a California entity, with a principal address of 4025 Spencer St Ste 104 Torrance, CA 90503, with a registered agent of Brian Ramon Magana located at 4025 Spencer St Ste 104 Torrance, CA 90503.

9. Defendant Brian Ramon Magana ("Mr. Magana") is the CEO and Secretary of Magana Construction with an address of 4025 Spencer St Ste 104 Torrance, CA 90503.

10. Defendant Bryce Ullman ("Ullman") is the CFO of Magana Construction with an address of 1641 W Ofarrell St San Pedro, CA 90732.

11. Defendants are each a person as defined by 47 U.S.C. § 153(39).

12. Defendants acted through their agents, affiliates, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**STATUTORY BACKGROUND**

13. The TCPA makes it unlawful to make calls to any cellular or residential line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

14. The TCPA makes it unlawful to make calls using an automatic telephone dialing system ("ATDS") without the call recipient's prior express consent.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. The TCPA provides a private cause of action to persons who receive such automated or pre-recorded calls. *See* 47 U.S.C. § 227(b)(3).

17. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

18. The TCPA's definition of unsolicited advertisement applies to "means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

19. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838, at* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

20. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id*. at §§ 12-13. *See also*, *Mims*, 132 S. Ct. at 744.

21. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee

on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

22. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2).

*23.* A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

24. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R § 64.1200(c)(2).

25. Under the TCPA, an individual may be personally liable for the acts alleged in the Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

"[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (*emphasis* added)

26. When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787

F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

27. Individual Defendants directed and oversaw the telemarketing activity in progress, including selecting any third-party affiliate to make the call, exercised control over those affiliates, and any other employees who made the telephone calls.

28. Employees can be held liable in TCPA actions for unlawful conduct.

29. The individual defendant in this case personally participated in the actions complained of by: (a) personally selecting the phone numbers that would be called; (b) approving the scripting that would be used on the calls; (c) selecting and managing the dialing equipment or supplier of the same used to make the calls; and (d) personally paying for the calls.

**FACTUAL ALLEGATIONS**

30. At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with phone number (424) XXX-1582.

31. The phone number is not associated with a business and is used by Plaintiff solely.

32. Plaintiff registered his phone number on the Federal Do Not Call Registry on or around January 18, 2008.

33. Plaintiff registered his phone number on the Do Not Call list to obtain solitude from telemarketing calls. Despite Plaintiff's efforts to avoid receiving such calls, Defendants continued to call Plaintiff.

34. Plaintiff is the account holder and customary user of his phone number.

35. Upon information and belief, the automated system used by Defendants to call Plaintiff has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

36. Upon information and belief, the automated system used by Defendants to call Plaintiff also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

37. The calling platform uses an algorithm whereby a random or sequential number generator, similar to a randomization formula or sequential dialing formula, selects which number to dial from the stored list of numbers, and sequences those numbers in order to automatically dial the numbers and send out calls en masse. Thus, a random or sequential number generator is used both to store the numbers, and to produce the stored numbers from the list, via the campaign, to the dialing platform itself.

38. Plaintiff was annoyed and felt harassed by the receipt of the calls from Defendants.

39. Defendants may have selected numbers to be called sequentially (or possibly randomly) and then used publicly available databases to identify the owner of the telephone number dialed when such randomly or sequentially generated call was made.

40. Even if Defendants "uploaded" a list of telephone numbers to a database, that database or system can still be using a random or sequential number generator to decide the order in which to send the calls, given that it can't dial them *all* at once.

41. For example, the system may have identified a dialing order to each telephone number for each campaign when sending out the calls, using a random or sequential number generator.

42. The calls were conducted using an Automatic Telephone Dialing System (ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

43. **Call 1.** On or about October 9, 2026, at 2:46 PM Pacific time, Plaintiff received a telemarketing telephone call from Defendants, or an agent acting on their behalf, made for solicitation purposes, from telephone number 323-607-0667.

44. Plaintiff answered Call 1, which lasted 34 seconds.

45. Plaintiff did not provide consent to the caller for follow up calls and did not express interest in any services.

46. Call 1 was flagged as Potential Spam by Plaintiff's phone.

47. **Call 2.** On or about October 27, 2026, at 3:04 PM Pacific time, Plaintiff received a telemarketing telephone call from Defendants, or an agent acting on their behalf, made for solicitation purposes, from telephone number 323-607-1297.

48. Plaintiff missed Call 2.

49. Call 2 was flagged as Potential Spam by Plaintiff's phone.

50. **Call 3.** On or about October 29, 2026, at 9:25 AM Pacific time, Plaintiff received a telemarketing telephone call from Defendants, or an agent acting on their behalf, made for solicitation purposes, from telephone number 323-607-0838.

51. When Plaintiff answered Call 3, he had to state multiple hellos, and heard a beep/tone, and was ultimately not connected to anyone and was disconnected. The call lasted 38 seconds.

52. Call 3 was flagged as Potential Spam by Plaintiff's phone.

53. **Call 4.** On or about October 30, 2026, at 2:28 PM Pacific time, Plaintiff received a telemarketing telephone call from Defendants, or an agent acting on their behalf, made for solicitation purposes, from telephone number 323-607-0768.

54. Call 4 was flagged as Potential Spam by Plaintiff's phone.

55. Plaintiff answered Call 4, and heard a tone, prior to being connected to a female who said she was "Mel", who said she was soliciting roofing services. She provided a call back number of 323-594-8462. She provided an email of info@buildpros.la and said she was with Build Pros.

56. After Call 4, Plaintiff called the telephone numbers 323-607-0667, 323-607-1297, 323-607-0838, and 323-607-0768, and all of the phone numbers played a message in sum and substance said "the person at extension 9999 is not available."

57. Plaintiff therefore alleges that all these phone calls are by the same caller, given the same message playing when being called back, the same first 6 digits, and all being flagged as Potential Spam by Plaintiff's phone, among other indicators.

58. BuildPros.la website has an address of 4025 Spencer St # 104, Torrance, CA 90503 listed.

59. A search of the California Contractors State license Board lists Magana Construction Inc dba Build Pros Construction at the same address.

60. Another indicator of the use of an ATDS on all calls is that Plaintiff heard tones after picking up the phone on some of the calls.

61. The purposes of the calls were for solicitation of roofing services.

62. Plaintiff alleges all the calls were made for and on behalf of the same entity.

63. To the extent that Defendants are utilizing a third-party call center to make calls on its behalf, Defendants named here are vicariously liable for their conduct, as that conduct was made for their own benefit.

64. The calls were made for the purposes of soliciting roofing services customers and were made using an ATDS and in violation of the do not call registry.

65. Plaintiff has not entered into an established business relationship with Defendants.

66. Defendants lack the necessary controls to make sure that solicitations are not sent to individuals who do not desire them.

67. Plaintiff has never consented to calls from Defendants which are challenged in this complaint.

68. Courts have relied in part on the "the general tort rule that 'corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" *Universal Elections*, 787 F. Supp. 2d at 416 (internal citations omitted); *see also Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898.

69. The individual Defendants in this action engaged in the operation of the telemarketing scheme.

70. The conduct alleged in this action was made willful and knowingly.

71. The TCPA requires telemarketers to provide training to their employees, contractors, etc., and Defendants have failed to properly train the same.

72. Defendants did not have any consent to call Plaintiff.

73. Defendants are not an organization exempt from the TCPA.

74. In total, Defendants and/or their affiliates placed at least FOUR (4) calls to Plaintiff.

75. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, and a sense that his privacy has been invaded by Defendants.

76. Defendants have a pattern and practice of failing to comply with the TCPA.

77. The foregoing acts and omissions were in violation of the TCPA.

78. Defendants are engaging in violations of the TCPA to get business.

79. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff is entitled to treble damages of up to $1,500.00 for each call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

80. The acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

81. Plaintiff seeks injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

82. Plaintiff is also entitled to an award of costs.

83. Defendants' calls were not made for "emergency purposes."

84. Defendants' calls to Plaintiff were made without any prior express written consent.

85. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

86. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively, and fraudulently and absent bona fide error, lawful right, legal defense, legal justification, or legal excuse.

87. As a result of the above violations of the TCPA, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

88. Plaintiff, in discovery will better identify how many telephone calls were made by Defendants and or their agents or affiliates, and requests leave to amend the complaint after identifying the instance count.

**COUNT 1. Violation of the TCPA's Automated Telemarketing Call Provisions, 47 U.S.C. § 227(b)(1)**

89. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

90. Defendant or one of its affiliates or vendors called Plaintiff's cellular telephone using an "automatic telephone dialing system" and/or a pre-recorded voice as defined by the TCPA on at least FOUR (4) occasions in violation of 47 U.S.C. § 227(b)(1), without Plaintiff's prior express written consent.

91. Plaintiff was statutorily damaged at least FOUR (4) occasions under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above, in the amount of $500.00 for each.

92. Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(b)(3)(C) for these willful or knowing violations.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against, Defendants, jointly and severally, in an amount of $6,000.00 plus costs and any other remedy deemed appropriate.

**COUNT 2.**

**VIOLATIONS CONCERNING TCPA IMPLEMENTING REGULATIONS, INCLUDING DO NOT CALL REGISTRY, 47 C.F.R. § 64.1200**

93. Plaintiff incorporates the foregoing paragraphs as though they were set forth at length herein.

94. By placing at least 4 telemarketing calls to Plaintiff's residential telephone number, Defendants have violated the TCPA and its implementing regulations, including but not limited to 47 C.F.R. § 64.1200.

95. The first violation, for each call, is calling a number on the national Do-Not-Call registry.

96. Plaintiff was statutorily damaged at least 4 times under 47 U.S.C. § 227(c)(5) in the amount of $500.00 for each such violation.

97. Plaintiff is also entitled to and seeks injunctive relief prohibiting Defendants from violating the TCPA's implementing regulations, 47 C.F.R. § 64.1200, in the future.

98. Plaintiff was further statutorily damaged because Defendants' willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under 47 U.S.C. § 227(c)(5) for these willful or knowing violations to $1,500.00 per call.

99. Plaintiff's telephone number was registered on the Do Not Call Registry more than thirty (30) days before Defendants' calls were made.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in his favor and against Defendants, jointly and severally, in an amount of $6,000.00 plus costs and any other remedy deemed appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of him and against Defendants, jointly and severally, in an amount to be more fully determined at trial, but at least $12,000.00 as permitted by statute, as follows:

A. All actual damages Plaintiff suffered,

B. Statutory damages of $500.00 per call for every violation of 47 U.S.C. § 227(b),

C. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(c)(5),

D. Statutory damages of $500.00 per call for each and every violation of 47 U.S.C. § 227(c) and the TCPA's implementing regulations;

E. Treble damages of $1,500.00 per call for each violation determined to be willful and/or knowingly pursuant to 47 U.S.C. § 227(c)(5);

F. All reasonable witness fees, court costs, pre-judgment and post-judgment interest, and other litigation costs incurred by Plaintiff,

G. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future,

H. Leave to amend this Complaint to conform to the evidence presented at trial,

I. Any other relief this Court deems proper.

Respectfully submitted,

Dated: October 30, 2026.

JORGE ALEJANDRO ROJAS
Rojas.jorge96@gmail.com
Plaintiff in Pro Se
557 Cambridge Way
Bolingbrook, IL 60440
(424) 219-1582